IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KIMBERLY C.,

                Plaintiff,        Civil Action No.
                                            5:19-CV-0432 (DEP)

ANDREW M. SAUL, Commissioner of Social
Security,[1]

                Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW OFFICE    PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

HON. GRANT C. JAQUITH           MOLLY CARTER, ESQ.
United States Attorney             Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

---

[1] Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on April 22, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   April 29, 2020
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KIMBERLY C.,

                                          Plaintiff,

-v-                                       5:19-CV-432

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,

                                          Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
April 22, 2020
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LACHMAN & GORTON LAW OFFICE
    P.O. Box 89
    1500 East Main Street
    Endicott, New York 13761
    BY:  **PETER A. GORTON, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    625 JFK Building
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **MOLLY CARTER, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (The Court and counsel present by telephone.  Time
2    noted:  11:26 a.m.)
3               THE COURT:  All right.  Plaintiff has commenced this
4    proceeding pursuant to 42, United States Code, Sections 405(g)
5    and 1383(c)(3) to challenge a determination by the Commissioner
6    of Social Security that plaintiff was not disabled at the
7    relevant times and therefore ineligible for the benefits for
8    which she applied.
9               The background is as follows:  The plaintiff was born
10   in July of 1960.  She is currently 59 years old.  She was
11   52 years of age at the time of the alleged onset of her
12   disability on July 10, 2012.  She stands 5'3" in height and
13   weighs at various times between 180 and 195 pounds depending on
14   where in the record you look, an example is Administrative
15   Transcript pages 45 and 354.  It's unclear at one time that
16   plaintiff lived in Endicott and another time in East Freetown.
17   She lives alone.  She was living with her son, that's at page
18   345.  He apparently moved out of state at some point.  She also
19   has two small dogs.
20              Plaintiff has a 12th grade education.  She attended
21   regular classes while in school.  She's right-handed.  Plaintiff
22   does not drive or take public transportation, according to page
23   140 of the Administrative Transcript.  She apparently gave up
24   her driver's license voluntarily.  Plaintiff last worked in July
25   of 2012.  Her past relevant work includes as an aide and a

1  Licensed Practical Nurse, or LPN, in nursing home and assisted
2  living settings.
3          Plaintiff suffers from several physical impairments,
4  including irritable bowel syndrome or IBS, GERD, fibromyalgia,
5  cervical degenerative joint and disc disease, herpes, kidney
6  stones, hepatitis C, obesity, hypothyroidism, and at one point
7  in the past Clostridium difficile or commonly referred to as C.
8  diff.  The C. diff appears to have occurred in 2012.  It was
9  treated with vancomycin and resolved in three months.
10         In terms of her cervical issues, plaintiff underwent
11 magnetic resonance imaging testing, or MRI testing, in May of
12 2015.  It appears the results -- at page 370 and 371 of the
13 Administrative Transcript, the findings were summarized in that
14 report.  It was referred to -- it showed mutli-level
15 degenerative spondylosis and disc protrusions.  It was
16 characterized by plaintiff's rheumatologist, Dr. Bonilla-Trejos,
17 at page 410 as revealing a disc herniation at C5-C6 -- I'm
18 sorry, C6-C7.  The actual MRI result is marked degenerative
19 spondylosis and central/right paracentral disc protrusion at
20 that level.
21         Plaintiff mentally suffers from depression, anxiety,
22 anger, and bipolar disorder.  In terms of physical, plaintiff
23 has treated with Associated Medical Professionals of Central New
24 York, Dr. Amin El-Hassan for her gastroenterologist issues, and
25 Dr. Biswarup Syam.  For rheumatology, she treats at Upstate with

1   Dr. Eduardo Bonilla-Trejos.  She also sees at Family Care
2   Network Nurse Practitioner Eleanor Klein.  That is where
3   Dr. Douglas Rahner also practices.
4            In terms of addressing her mental needs, she treats
5   at Cortland County Mental Health Clinic where she sees Licensed
6   Clinical Social Worker Helen Haldane weekly.  Plaintiff was
7   consultatively examined by Dr. Elke Lorensen on March 13, 2016,
8   and by Dr. Dennis Noia on March 17, 2016.
9            In terms of medication, she has been prescribed
10  several over time.  Her IBS has been treated with Amitriptyline
11  and FiberCon.  She also has been prescribed Bentyl,
12  Escitalopram, Flonase, Fluticasone -- which I think is the
13  generic of Flonase -- Mobic, Omeprazole, Pravastatin,
14  Vancomycin, Zoloft, Celexa, Lexapro, Wellbutrin, Metformin,
15  Prilosec, and Bupropion.
16           In terms of activities of daily living, plaintiff
17  does cook, does some cleaning, can do laundry, shops.  She can
18  dress and groom herself.  She bathes.  She watches television.
19  Plaintiff apparently smokes daily between a half and one pack of
20  cigarettes per day.  She tried at one point to quit using
21  Chantix, but there's an notation on October 25, 2017, at page
22  564 of the Administrative Transcript that she was once again
23  smoking.
24           Procedurally, plaintiff applied for Title II
25  disability insurance benefits on December 31, 2015, and

1  protectively filed for Title XVI Supplemental Security Income
2  benefits on January 6, 2016.  In both she alleged a July 10,
3  2012, onset date.  At page 139 of the Administrative Transcript,
4  she claims disability based on fibromyalgia, osteoarthritis,
5  chronic back pain, and bipolar disorder and IBS.
6            A hearing was conducted on February 12, 2018, by
7  Administrative Law Judge Melissa Hammock to address plaintiff's
8  applications.  On April 3, 2018, ALJ Hammock issued an
9  unfavorable decision.  That became a final determination of the
10 agency on February 21, 2019, when her request for review was
11 denied by that body.  On April 10, 2019, plaintiff commenced
12 this action, which is timely.
13           In her decision, ALJ Hammock applied the familiar
14 five-step test for determining disability.  She first noted that
15 plaintiff's last date of insured status was December 31, 2017.
16 At step one, the ALJ concluded that plaintiff had not engaged in
17 substantial gainful activity since the alleged onset date of
18 July 10, 2012.
19           At step two, she concluded that plaintiff suffers
20 from several severe impairments that impose more than minimal
21 limitation on her ability to perform work functions, including
22 obesity, polyarthritis, fibromyalgia, degenerative joint
23 disease, cervical degenerative disc disease, cervical stenosis,
24 and cervical radiculopathy.
25           At step three, she concluded that plaintiff's

1   conditions did not meet or medically equal any of the listed
2   presumptively disabling conditions set forth in the
3   Commissioner's regulations, specifically considering listings
4   1.04, 1.02, SSR 02-1p when it comes to obesity, and SSR 12-2p
5   used to consider plaintiff's fibromyalgia and the effects of it
6   on her ability to perform work functions.
7          The ALJ next concluded that plaintiff retains the
8   residual functional capacity, or RFC, to perform medium work
9   with exceptions that she can occasionally climb ramps and
10  stairs, never climb ladders, ropes, and scaffolds, she can
11  frequently stoop, and occasionally kneel, crouch, and crawl.
12  She should have no exposure to unprotected heights and can
13  occasionally reach overhead and frequently reach in all other
14  directions.
15         Applying that residual functional capacity at step
16  four, the Administrative Law Judge concluded that plaintiff is
17  capable of performing her past relevant work as an LPN and
18  nurse's aide.
19         As an alternative basis for finding no disability,
20  the Administrative Law Judge proceeded to step five and found
21  that if plaintiff were capable of performing a full range of
22  medium work, the Medical-Vocational Guidelines, or Grids, and
23  specifically Grid Rules 203.22 and 203.15, would direct a
24  finding of no disability.  She went on, however, based on the
25  testimony of the vocational expert to find that plaintiff was

1  capable, notwithstanding her limitations, of performing as an
2  office helper, a ticket taker, and a mail clerk, and that there
3  was a sufficient number of jobs in the national economy in those
4  categories and therefore found that plaintiff was not disabled.
5           As you know, my task is limited.  The standard that I
6  apply is highly deferential.  I must determine whether the
7  correct legal principles were applied and the resulting
8  determination was supported by substantial evidence, substantial
9  evidence being defined as such relevant evidence as a reasonable
10 mind might accept as adequate to support a conclusion.  As the
11 Second Circuit Court of Appeals noted in *Brault v. Social
12 Security Administration*, 683 F.3d 443, from 2012, it is an
13 extremely stringent standard, even more strict than the clearly
14 erroneous standard.  Under the prevailing test and standard,
15 once an ALJ finds facts, according to *Brault*, it can be rejected
16 only if a reasonable factfinder would have to conclude
17 otherwise.
18          The plaintiff in her challenge raises relevant
19 contentions.  At step two, she challenges the failure to find
20 IBS, incontinence, and urinary urgency as severe, and the
21 failure to make specific findings in that regard.  She also
22 challenges the rejection of Dr. Douglas Rahner's opinion
23 contending that he qualifies as a treating source.  Plaintiff
24 challenges the residual functional capacity finding and
25 specifically the failure to account for plaintiff's diarrhea and

1  incontinence and need for access to a bathroom.  She also
2  challenges the finding that she is capable of performing medium
3  work is not supported by any medical opinion.  She challenges
4  the failure to assess work pace and attendance, and contends
5  that the Administrative Law Judge's determinations at step four
6  and five are infected by those errors.
7           As a backdrop, I note when examining plaintiff's
8  arguments, I have to bear in mind that it is her burden through
9  step four to establish her conditions and, importantly, the
10 limitations that those conditions present on her ability to
11 perform work functions.  Turning first to the step two argument,
12 the governing regulations provide that an impairment or
13 combination of impairments is not severe if it does not
14 significantly limit a plaintiff's physical or mental ability to
15 do basic work activities.  That is from 20 C.F.R. Section
16 404.1521(a).
17          It is true that this is a modest test at step two.
18 It is considered as, quote, de minimis and the step two analysis
19 is intended only to screen out the truly weakest of cases, *Dixon
20 v. Shalala*, 54 F.3d 1019, from the Second Circuit, 1995.  It is
21 also true, however, that the mere presence of a disease or
22 impairment that has been diagnosed is not by itself sufficient
23 to establish a condition as severe, *Coleman v. Shalala*, 895 F.
24 Supp. 50, from the Southern District of New York, 1995.  In this
25 case, it is, as I indicated previously, plaintiff's burden to

1   establish at step two that a condition is severe.  And as I just
2   noted, the mere diagnosis alone of IBS, for example, does not
3   necessarily mean that it qualifies as severe.
4           I also note that if the Administrative Law Judge
5   proceeds and does find other conditions severe and proceeds
6   through the five-step analysis, any error is harmless, provided
7   that any limitations presented by nonsevere impairments are
8   considered when formulating the residual functional capacity.
9   In this case, in terms of the IBS, I find no failure to consider
10  that as severe.  Plaintiff did not carry her burden of
11  establishing the limitations associated with that.
12          I note that the C. diff -- I won't call it a red
13  herring, but the C. diff clearly was a serious impairment, but
14  it only lasted three months in 2012 and was resolved in October
15  of 2012.  I don't see any further indication that there are
16  additional C. diff flare ups.  Plaintiff did not undergo any
17  treatment for IBS in October 2012, when her C. diff was
18  resolved, until January 2015 and she infrequently complained.  A
19  colonoscopy that was conducted in March of 2013 showed only
20  quiescent colitis, that's at page 209 and 210 of the
21  Administrative Transcript.  As the Administrative Law Judge
22  indicated, it appears that medication and diet have controlled
23  the plaintiff's IBS.  I also note that the plaintiff either
24  denied symptoms altogether or failed to mention symptoms to
25  Nurse Practitioner Klein on multiple occasions, including in

1  December 2015, April 2016, November 2016, May 2017, July 2017,
2  August 2017, and November 2017.
3          Turning to the urinary issues, there appear to be,
4  really, very few complaints, again, or denial or failure to
5  mention on multiple occasions to Nurse Practitioner Klein, only
6  brief periods of treatment and testing that resulted in normal
7  results, a stable bladder, and no flow obstruction.
8          In terms of GERD, it appears from the medical records
9  that that condition was well controlled through medication and
10 there's little other treatment.  There's no proof in the record
11 of any limitations presented by GERD on plaintiff's ability to
12 perform basic work functions.  And once again, there's a
13 significant number of denials of symptoms or failure to mention
14 GERD symptoms.  So in sum, I find that the rejection at step two
15 of those three conditions as severe is supported.
16         Turning to the treating source argument, there's no
17 question that the opinion of a treating source regarding the
18 nature and severity of an impairment is entitled to considerable
19 deference, of course provided that it is supported by medically
20 acceptable clinical and laboratory diagnostic techniques and is
21 not consistent with other substantial evidence.  In one of the
22 principal cases addressing this issue, the Second Circuit noted
23 that in *Burgess v. Astrue*, 537 F.3d 117, Second Circuit, 2008.
24         Under the regulations that were in effect at the
25 relevant times, specifically 20 C.F.R. Sections 404.1527 and

1  416.927, the medical opinions of a treating source are generally
2  entitled to controlling weight unless contradicted by other
3  substantial evidence.  When treating source opinions are not
4  given controlling weight, then the Administrative Law Judge must
5  consider the so-called *Burgess* factors and indicate what weight
6  it is given.
7           The term treating source is defined in 20 C.F.R.
8  Section 404.1527(a)(2) as follows:  Treating source means your
9  own acceptable medical source who provides you, or has provided
10 you, with medical treatment or evaluation and who has, or has
11 had, an ongoing treatment relationship with you.  Generally, we
12 will consider that you have an ongoing treatment relationship
13 with an acceptable medical source when the medical evidence
14 establishes that you see, or have seen, the source with the
15 frequency consistent with accepted medical practice for the type
16 of treatment and/or evaluation required for your medical
17 condition.
18          In this case, I find that the ALJ's rejection of Dr.
19 Rahner as a treating source is supported by substantial
20 evidence.  I carefully reviewed the medical records associated
21 with plaintiff's treatment with Nurse Practitioner Klein at
22 Family Health Network and could not find that Dr. Rahner is
23 mentioned as having any sort of personal treating relationship
24 with the plaintiff.  I also note that, in any event, his
25 opinions were also properly discounted as being inconsistent

1   with the record, and in particular, Dr. Lorensen's opinions.
2           Turning to the residual functional capacity argument,
3   obviously we know that an RFC is defined as the most that a
4   plaintiff can do consistent with her impairments at issue, 20
5   C.F.R. Sections 404.1545 and 416.945.  An RFC has to be informed
6   by consideration of all relevant and medical and other evidence,
7   *Tankisi v. Commissioner of Social Security*, 521 F. App'x 29,
8   from the Second Circuit, 2013.  To properly ascertain a
9   claimant's RFC, an ALJ must assess plaintiff's exertional
10  capacities and also her, you know, capabilities and
11  nonexertional limitations, as well.
12          In this case, the ALJ must review the record in its
13  entirety to assess the RFC.  In this case, the RFC is well
14  supported by Dr. Lorensen's opinions, not only the medical
15  source portion of Dr. Lorensen's report, but also the extremely
16  benign findings of Dr. Lorensen and other practitioners,
17  including Nurse Practitioner Klein and the conservative
18  treatment that plaintiff was prescribed.
19          The issue really is the impact on plaintiff's ability
20  to work.  The IBS gave me pause.  I know that plaintiff has
21  cited some fairly compelling cases, *Lowe v. Colvin*, 2016 WL
22  624922, that was from the Western District of New York, 2016, a
23  case in which Mr. Gorton also represented the plaintiff.  And
24  Judge Telesca, who unfortunately recently passed away,
25  criticized the Administrative Law Judge for failing to make

1   specific findings regarding the frequency and length of

2   anticipated bathroom breaks.  The plaintiff also cites *Spaulding*

3   *v. Astrue*, 702 F. Supp. 2d 983, from the Northern District of

4   Illinois, with a similar holding that the ALJ erred by not

5   articulating findings concerning the need for bathroom breaks.

6          However, in this case, I think it is distinguishable

7   because plaintiff's IBS was not found by the Administrative Law

8   Judge to be severe.  The lack of any need in the RFC to limit

9   plaintiff's -- to specify plaintiff's access to bathrooms is

10  supported by substantial evidence.  Plaintiff's IBS has waned

11  and waxed, but appears to be relatively under control.  There

12  was no treatment of the IBS from 2013 until 2015.  The evidence

13  indicates that plaintiff's medications helped, including at page

14  303 of the Administrative Transcript, a notation from

15  February 5, 2016.

16         As I indicated before, there are multiple indications

17  of plaintiff's denying -- specifically denying IBS, including

18  381 and 391 of the Administrative Transcript.  There are also

19  denials of symptoms to Dr. Bonilla-Trejos in December 2015,

20  April 2016, November 2017, no mention of symptoms in

21  February 2016, and August 2016, no specific treatment.  And it

22  appears that almost all of the references to the severity of the

23  IBS, including, for example, having to go ten times per day,

24  that occurred in March of 2013, most all of those are in the

25  distant past and the more recent medical records don't reflect

1  the ongoing issue with regard to IBS, so I think this is a very
2  different case than *Lowe* and *Spaulding*.
3         Turning to the residual functional capacity and the
4  exertional requirements, I agree with the Commissioner that a
5  medical opinion is not always required to support an RFC.  In
6  this case, however, the medium exertional requirement is, I
7  believe, supported by Dr. Lorensen's opinion.  And in any event,
8  any error in that regard would be harmless because, as the
9  Commissioner pointed out at step five, a determination was made
10 that plaintiff is capable of performing work in the national
11 economy falling in the light category.
12        Again, I agreed that little weight was properly given
13 to Dr. Rahner's opinion when it comes to absenteeism and off
14 task, though I think the medical record as a whole and Dr.
15 Lorensen's opinions with no mention of any limitations on
16 schedule support the residual functional capacity.
17        So I do find no error in the residual functional
18 capacity, no error at step four where plaintiff remains to carry
19 the burden, there's no evidence that plaintiff is not able to
20 work in healthcare, the C. diff resolved itself in 2012 and
21 2013, and, again, if there is error at step four, it is harmless
22 because at step five, based on the vocational expert's
23 testimony, there is work in the national economy that plaintiff
24 is capable of performing.
25        So in conclusion, I find that the determination

1  resulted from the application of proper legal principles and is
2  supported by substantial evidence, so I will grant judgment on
3  the pleadings to the defendant and dismiss plaintiff's
4  complaint.
5          Thank you both for excellent presentations.  I
6  enjoyed working with you.  Stay safe.
7          MR. GORTON:  Thank you, your Honor.
8          MR. CARTER:  Thank you, your Honor.
9          (Time noted:  11:55 a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1
 2                CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5          I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 6  NYRCR, Official U.S. Court Reporter, in and for the United
 7  States District Court for the Northern District of New York, DO
 8  HEREBY CERTIFY that pursuant to Section 753, Title 28, United
 9  States Code, that the foregoing is a true and correct transcript
10  of the stenographically reported proceedings held in the
11  above-entitled matter and that the transcript page format is in
12  conformance with the regulations of the Judicial Conference of
13  the United States.
14
15          Dated this 27th day of April, 2020.
16
17          x Hannah F. Cavanaugh
18            HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
19            Official U.S. Court Reporter
20
21
22
23
24
25
```